IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **JESSE LOPEZ**, | ) |
| Plaintiff, | ) |
| | ) |
| v | ) Case No. |
| | ) |
| **COOK COUNTY SHERIFF'S OFFICE, Et al** | ) |
| Defendant. | ) |

## NATURE OF THE ACTION

In 2024 and 2025, Lopez spoke out against Dart. He blew the whistle—exercising his unassailable First Amendment right—on the grave dangers posed by transferring electronic monitoring authority from the Cook County Sheriff's Office to the Chief Judge's Office. Lopez warned, publicly and unequivocally, that Dart was committing perjury before a legislative body in service of a political agenda. He cautioned that these actions would imperil Cook County, his home, and the very neighborhoods he has sworn to protect.

His warnings were ignored. Not only ignored but punished. Lopez's police powers were stripped from him. To compound the humiliation, Dart assigned him to janitorial duties. Retaliation, simple and stark, followed the exercise of a constitutional right.

Today, those warnings have proven tragically prescient. The horror Lopez foretold has become reality. Chicago has recently endured events that confirm the peril he predicted. Consider, for example, the man who allegedly set 26-year-old Bethany MaGee on fire aboard a Blue Line train last month. That individual, Lawrence Reed, had been arrested more than seventy times and remained on electronic monitoring despite violating its conditions repeatedly—and in

1

spite of the Cook County State's Attorney's request that he be detained. He assaulted a social worker at MacNeal Hospital, yet was left free.

These events are not isolated anomalies. In October, a Chicago man received 22 years for carjacking at gunpoint while on electronic monitoring for a prior attempt to kill a Cook County sheriff's deputy. Just over a year ago, Lacramioara Beldie was fatally stabbed by her estranged husband, Constantin Beldie, who was also under electronic monitoring despite dozens of documented violations. A wrongful-death suit alleges that no meaningful intervention occurred from either the County or its monitoring vendor.

Even the State's Attorney, Burke, has acknowledged the problem. "Electronic monitoring needs a law enforcement component," she said, correctly noting that the current system has virtually no accountability, no muscle to enforce compliance, and leaves dangerous individuals free while awaiting trial. She described herself as "the skunk at the garden party" for daring to question what happens when someone cuts off their monitor.

The evidence is plain, unambiguous, and undeniable: electronic monitoring, as currently managed under the Chief Judge's sole authority, is a system devoid of enforcement. The risk to public safety is real, acute, and escalating. It is therefore imperative that the Chief Judge, Beach, recognize this as a crisis. In 1993, as to not be the local municipalities, including the city of Chicago and to maintain safety within the communities of Cook County, an Ordinance was passed creating the Department of Community Supervision and Intervention. The only legal manner that can be applied to maintain public safety, is to insist that Sheriff Dart honor his legal constitutional duty, as Warden of the county and continue to supervise and enforce the current Electronic Monitoring Program.

Lopez, meanwhile, suffered for his vigilance. He was retaliated against, punished for speaking truth to power, for observing and exposing perjury, and for exercising his constitutional rights. Yet history has proven him right. His warnings, once dismissed, now echo in the tragic events that have unfolded across Chicago. This is no abstract policy dispute. This is a crisis, borne of ignored warnings, political expediency, and systemic weakness. Justice, safety, and the credibility of law enforcement demand immediate remedial action.

## PARTIES

1. Plaintiff, Jesse Lopez ("LOPEZ"), is an individual that resides in Cook County, Illinois, and has been an Illinois resident at all relevant times herein.

2. Defendant, the Cook County Sheriff's Office ("CCSO"), is a governmental entity operating within Cook County, Illinois, and is responsible for establishing and implementing policies, practices, customs, training, supervision, and discipline of its employees. At all times relevant herein, CCSO was the employer of Plaintiff LOPEZ.

3. The CCSO is an agency within Cook County that is responsible for all law enforcement related activities, serving court orders, executing warrants, providing security for all court facilities, and the county jail. The CCSO is responsible for the custody and supervision of all pre-trial detainees placed in custody by the court of that county, in accordance with 730 ILCS 125/4.

4. Defendant, THOMAS J. DART ("DART"), is an individual that resides in Cook County, Illinois and at all relevant times herein served as the elected Sheriff of Cook County.

5. Defendant, ADRIANA MORALES, is an individual that resides in Illinois and was at all relevant times herein the First Assistant Chief of Staff for Sheriff Thomas J. Dart at the CCSO.

6. Defendant, ALLAN PINEDA, is an individual that resides in Illinois and was at all relevant times herein the Executive Director of the Electronic Monitoring Unit for Sheriff Thomas J. Dart at the CCSO.

7. Defendant, ERIC HARRIS, is an individual that resides in Illinois and was at all relevant times herein the Assistant Executive Director of the Electronic Monitoring Unit for Sheriff Thomas J. Dart at the CCSO.

8. Defendant, Carmen RUFFIN, is an individual that resides in Illinois and was at all relevant times herein the Assistant Executive Director of the Electronic Monitoring Unit for Sheriff Thomas J. Dart at the CCSO.

9. Defendant, Lasharme COLLINS, is an individual that resides in Illinois and was at all relevant times herein the Assistant Executive Director of the Electronic Monitoring Unit for Sheriff Thomas J. Dart at the CCSO.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction over the federal claims in this action pursuant to 28 U.S.C. § 1331 as well as supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. §1367 because those claims are so related to LOPEZ's federal question claims that they form part of the same case or controversy.

11. Venue is proper under 28 U.S.C. §1391(b) as all the parties reside within the judicial district, and the events from which this claim arises all occurred within the district.

## BACKGROUND OF THE ELECTRONIC MONITORING PROGRAM

12. Illinois state law mandates the Sheriff of any county, with the responsibility to supervise the detention of all persons placed in custody by a judge of the same jurisdiction.

13. As a result of the Duran Decree, Cook County Sheriff's Office was mandated to operate an electronic monitoring unit, to relieve the overcrowding of the county jail.

14. As to not burden the local municipalities with additional cost and resources, and to *ensure public safety*, Cook County passed an ordinance in 1993, which established the Sheriff's Department of Community Supervision and Intervention for the purpose of creating a dedicated *Electronic Monitoring Unit*.

15. On or about October 7th, 2024, Sheriff Thomas J. DART and his executive staff testified before the Cook County Board of Commissioners, citing the urgency to transfer the Electronic Monitoring program from the Cook County Sheriff's Office, due to the newly established law that prevents the Sheriff's Office from remanding violators of the Electronic Monitoring program and requires the CCSO to "shut-off" the monitoring device, essentially allowing offenders to potentially commit additional crimes and harm the public at large, with no consequences.

## LOPEZ'S EMPLOYMENT

16. On April 7, 1997, LOPEZ began joint employment with the Cook County Sheriff's Office and the Cook County Board of Commissioners, as a Deputy Sheriff, assigned to the Cook County Jail.

17. On May 22, 1999, LOPEZ was promoted to the position of Investigator and after successfully completing the required courses and passing all State tests, Lopez began working within the Electronic Monitoring Unit for the CCSO.

18. As an Investigator, LOPEZ monitored activities of Participants that have been court-ordered to the Electronic Monitoring Program in Cook County, to ensure equitable

and uniform assessments, and communicated decisions to the command staff, via case reports.

19. LOPEZ's responsibilities included, but were not limited to;

    a. Conducting Investigations, which may result in the remanding individual(s) into custody, based on the preponderance of evidence and information submitted through multiple law enforcement data systems.
    b. Conducting unannounced home checks for contraband, such as firearms, illegal narcotics and ensuring compliance with all "No Contact with Minors" court orders.
    c. Responding to "Calls for Service" regarding violations of the Electronic Monitoring Program.
    d. Tracking and locating violators of the Electronic Monitoring Program.
    e. Arresting, Booking and Processing violators of the Electronic Monitoring Program, and testifying in court.
    f. Participating in "Crime Reduction Initiatives," which included patrolling "high crime" communities throughout Cook County.
    g. Participating in "Targeted Searches," which are based on information gathered through, the Cook County Sheriff's Police Intelligence Units, Chicago Police Department, and other law enforcement agencies.

20. LOPEZ reported directly to the supervision and command staff at the Electronic Monitoring Unit, including but not limited to Executive Director Carmen RUFFIN, Director Lesharme COLLINS, Executive Director Allan PINEDA, and Assistant Executive Director Eric HARRIS.

21. In 2019, LOPEZ informed the Sheriff's Office of Professional Review (OPR) of an illegal order issued by Executive Director Carmen RUFFIN and Director Lasharme COLLINS, to remove personally owned property from the residence of E.M. Participants, this order violated the 4th Amendment and federal guidelines regarding Search and Seizure, the office ignored this.

22. The illegal action had become a common practice within the OPR unit, as cited in a Federal Lawsuit filed by a current Investigator of OPR. *See, Pagani v. Sheriff of Cook County, Thomas J. Dart, et al.*, No. 1:24-cv-13320 (N.D. Ill. Dec. 30, 2024).

6

23. LOPEZ was involved as a witness in a "Illegal search and seizure" allegation filed by Investigator Steven BIENIEK, against Executive Director RUFFIN and Director Lasharme COLLINS.

24. Following this LOPEZ was subjected to a pattern of retaliatory disciplinary actions, all of which were ultimately found by OPR to be "not sustained."

**NEW INCIDENT**

25. On October 8th, 2024, Commissioner Frank AGUILAR held a local meeting at his Lyons, Illinois office regarding an issue that many constituents were concerned about

26. The issue being the transferring of the Electronic Monitoring program from the Sheriff Office to the Office of the Chief Cook County Judge.

27. Lopez was present as he is a resident of Cook County.

28. Lopez has family and friends that live in Cook County.

29. Lopez was concerned about the safety of his family and friends.

30. Lopez, as a concerned citizen, participated in this meeting with members of the Cook County legislature.

31. LOPEZ believed it was dangerous to transfer the program, and that his county would be in danger if this were done.

32. Lopez, as a concerned citizen, spoke out about the possible violence this could increase.

33. Lopez was also asked about the veracity of facts that had been expressed by Tom Dart.

34. Lopez responded that he was afraid to comment on this because he did not want to face work retaliation.

35. LOPEZ had concerns that he could be exposing himself to Adverse Employment Action by the CCSO if he disclosed any wrongdoing.

7

36. Lopez was informed that he should be honest and that his participation would be protected as he was simply giving his opinion as a concerned citizen.

37. During the meeting, LOPEZ explained to the legislators how recent statements made by Sheriff DART and the Executive Staff of the CCSO were misleading and false, and in his opinion constituted perjury.

38. Lopez believed that these actions were unlawful and constituted perjury.

39. Additionally, as a concerned citizen LOPEZ provided the Commissioners with information related to why he believed there would be dangers to the public.

40. Lopez expressed his fear that his family and neighbors would be at risk if the unit were transferred because this would create safety issues for the citizens of the county.

41. Commissioners AGUILAR and MOORE agreed the issue was complex, and due to the magnitude of Public Safety involved, it would require research, public hearings, and must be brought before the County Board before any action is taken.

42. The commissioners would be voting on the issue.

43. On November 21, 2024, CCSO executive staff, including Sheriff Thomas J. DART appeared before the Cook County Board of Commissioners to request the transfer of the Sheriff's Electronic Monitoring Program to the Office of the Chief Judge, a non-law enforcement department.

44. On December 18, 2024, including the weeks before and after, Sheriff Thomas J. DART knowingly and without lawful authority made false statements on WGN News and other broadcast news agencies, with the intent of causing a public panic, to gain support to transfer the CCSO Electronic Monitoring Unit to the OCJ- E.M. Unit, by stating:

    a. The Illinois State Law does not allow the CCSO to remand or take legal action against offenders of the Electronic Monitoring Program.

    **Fact-In-Case**;
  i. Offenders can be remanded in accordance with Illinois laws. 730ILCS5/5-8a-4.15. Failure to comply with a condition of the electronic monitoring or home detention program. 725 ILCS 5/110-6.1(a)(6). Denial of pretrial release.

b. The CCSO must shut off the monitoring device 2 days per week, and the Sheriff's Office is not allowed to monitor their movement.
  **Fact-In-Case**;
  i. Federal law and Illinois State law prohibits turning off the device, and according to Track Group (class given on 01/15/25), the CCSO monitors the E.M. Participants closely, while on movement.

c. The Sheriff stated there was no single law that required him to administer the Electronic Monitoring Program.
  **Fact-In-Case**;
  i. in November of 1992, in conjunction with the DURAN CONSENT DECREE, Cook County passed an ordinance creating the Cook County Sheriff's Department of Community Supervision and Intervention, which included the newly created Electronic Monitoring Unit under direct jurisdiction of the Sheriff.
  ii. Additionally, there are also state laws that compel the Sheriff of each county within the state of Illinois to be responsible for all individuals placed into custody of the Sheriff, by a competent court of that county. * 730 ILCS 125/2 (from Ch. 75, par. 102) Sec. 2. The Sheriff of each county in this State shall be the warden of the jail of the county and shall have the custody of all committed persons in the jail. ** 730 ILCS 125/4 (from Ch. 75, par. 104) Sec. 4. The Warden of the jail shall receive and confine in such jail, until discharged by due course of law, all persons committed to such jail by any competent authority.

45. On January 15, 2025, LOPEZ and all Investigators assigned to the CCSO Electronic Monitoring Unit were provided continuing education in the form of classes related to the functionality of the electronic monitoring device, software, and analytical process.

46. Mr. A.J. Gigler, who identified himself to the entire class as an instructor with Track Group, conducted a continuing education class related to the electronic monitoring device and system.

47. After class had ended, LOPEZ and A.J. GIGLER engaged in conversation, with A.J. GIGLER offering LOPEZ a business card and inviting LOPEZ to call anytime there are

9

any questions or concerns regarding the operation or functionality of the electronic monitoring equipment or the support system.

48. On February 5th, 2025, LOPEZ and Commissioner AGUILAR were speaking on the phone, when Commissioner AGUILAR stated that he had legal and ethical concerns about the safety of the public, regarding the statements made by Sheriff DART relating to the fact that electronic monitoring devices are shut-off for two (2) days a week, with the Defendant (known as, *Individual In Custody*) allowed to be in public with no supervision.

49. Commissioner AGUILAR also voiced concerns regarding the campaign Sheriff DART has made public to end his Electronic Monitoring program and the negative impact on public safety this action will create.

50. Lopez decided to speak out about the possible perjury by Dart to Commissioner Aguilar.

51. At this point LOPEZ continued to express that he had concerns that he could be exposing himself to Adverse Employment Action by the CCSO, since it would be discovered through his whistleblowing that Sheriff DART and the CCSO were committing a crime, by providing the County Board and the public with false and misleading information particularly by committing perjury on multiple occasions before the county board and on other instances.

52. LOPEZ revealed to Aguilar who led the legislative branch that oversaw the sheriff's office and budget that Sheriff DART and the CCSO were committing perjury by intentionally making false and misleading statements to the public and the Cook County Board of Commissioners to gain support to eliminate the Sheriff's E.M. program and that this would be dangerous to all constituents.

53. LOPEZ informed Commissioner AGUILAR that CCSO continues to monitor all *Individual in Custody* and their whereabouts on the days they are allowed outside their homes electronic monitoring devices are *Never* shut down, except for repairs or extenuating circumstances.

54. Commissioner AGUILAR asked if LOPEZ had any evidence to support the statement, or that would support that perjury was being committed.

55. At this point, LOPEZ recalled a recent class that was given by the Track Group Company, which provides the services for electronic monitoring devices.

56. Lopez was given a business card from the instructor, A.J. GIGLER, who was the instructor and had given a class regarding the functionality of the electronic monitoring GPS device and the support system.

57. LOPEZ agreed to connect Commissioner AGUILAR with the instructor if the instructor was willing to accept an invitation to speak to him.

58. The Sheriff's office found out that Commissioners including Aguilar had spoken to the vendor after Lopez spoke out.

59. Less than 2 weeks after reporting the perjury, LOPEZ was informed threatened by Executive Director PINEDA that he would soon be de-deputized.

60. In a first meeting PINEDA informed LOPEZ that he would likely soon be de-deputized (stripped of police powers) and transferred from the Electronic Monitoring Unit, but that this was pending a "fact finding investigation."

61. LOPEZ was told numerous times by PINEDA that he was "just following orders" given to him and that he has no further information regarding the allegations.

62. LOPEZ was told he would now report to Superintendent Bruce VILLANOVA, at which time LOPEZ was informed that his new duties were as a janitor / laborer, then instructed to go outside, and clean the front of the building's lobby area, hallways, elevators, and restrooms.

63. On Tuesday, February 11, 2025, Lopez was de-deputized, and his police powers were taken away in retaliation.

64. Lopez went from being a police officer to being forced to be a janitor as part of the retaliation for speaking out during the week of February 11, 2025 to February 14, 2025.

65. Later that week, when it snowed, LOPEZ was sent to "hand" shovel the sidewalks outside of the facility on California Avenue and 31st Street. This was also retaliation.

66. Lopez continued to speak out, and the retaliation continued.

67. LOPEZ felt that these assignments were to publicly humiliate him for speaking out.

68. On Friday, February 14, 2025, LOPEZ reported to the Daley Center and was instructed to sit and wait. During which time, LOPEZ was required to perform clerical duties. Again, as punishment for speaking out.

69. On Wednesday, March 5, 2025, LOPEZ reported as instructed via email, to the Sheriff's Office of Professional Review "OPR" (formally known as IAD) and met with Investigator Luis CARRILLO.

70. On April 15th, 2025, LOPEZ again reported, as instructed via email, to OPR and met with Investigator Luis CARRILLO.

71. Investigator CARRILLO failed to conduct a proper investigation, by knowingly and without justification submitting misleading information within his OPR report and failed

to interview Commissioner AGUILAR, who is a key witness to the alleged allegations, for the unlawful and intentional purpose of harming LOPEZ.

72. On August 28th, 2025, LOPEZ was informed that disciplinary action taken against him was found sustained and a 21-day suspension without pay would be assessed against him and documented within his employee file. This was again retaliation as Lopez continued to speak out.

73. The investigation was pre-textual and punishment for speaking out.

### COUNT I
### FIRST AMENDMENT RETALIATION UNDER 42 U.S.C. § 1983 FREEDOM OF SPEECH AGAINST ALL DEFENDANTS

**NOW COMES** the Plaintiff, Lopez, by and through his attorneys, for his Complaint against all Defendants, including Cook County Sheriff's Office; and the other defendants in both their individual and official capacity, for a violation of 42 U.S.C. § 1983 ("§1983"), a violation of Lopez's First Amendment (as incorporated through the Fourteenth Amendment) Rights of Free Speech, and in support thereof states and alleges as follows:

74. Lopez restates and re-alleges all paragraphs above as though fully set forth herein.

75. Defendants violated Lopez's free speech rights because they demoted him and de-deputized him in retaliation for expressing his opinion to the cook county commissioners who are the legislative body of cook county about the dangers his community would face.

76. The adverse employment actions including but not limited to de-deputizing him and making him a janitor amount to a constitutional deprivation.

77. The speech Lopez engaged in was constitutionally protected, and the Defendants retaliated against him because of that speech.

78. As such, Lopez can establish that his alleged constitutional deprivations were motivated by his free speech.

    a. While Lopez was a public employee, his speech is constitutionally protected and his interest in expressing himself and commenting on the matters referenced supra was as a private citizen on a matter of public concern outweighs any injury the speech could cause to the Defendant interest in promoting effective and efficient public service

    b. The safety issues and dangers to the community and expressing when elected officials are lying are matters of public concern.

79. Lopez's talking to an elected official over his concerns for the safety of his community and reporting what he believed to be perjury were nondisruptive exercises of his First Amendment right to express himself on matters of public concern.

80. Lopez's speech was "at least a motivating factor" or a "sufficient condition" of Defendants' decision to take away his police powers.

81. In fact, the police-powers were taken away shortly after speaking out.

82. As such, the protected activity and the adverse action are not wholly unrelated.

83. The temporal proximity of Lopez's speech and his termination cannot be denied. Lopez was retaliated only a few days after speaking with the legislature.

84. Defendants cannot provide a non-retaliatory reason for the adverse action, and the Defendants' proffered reasons are a mere pretext for retaliation.

85. Defendants had no real reason to de-deputize or make Lopez a janitor. Lopez worked for years and was meeting all his employer's reasonable expectations. To be terminated after speaking to members of the legislature shows there was animosity towards Lopez.

**WHEREFORE**, the Plaintiff, Lopez, requests that judgment be entered against Defendants, and that this Court award him the following relief: Reinstatement to his previous position, or an equivalent position, with the same seniority status he would have had but for Defendants' actions; Back pay in an amount to be determined at trial; In the event reinstatement is not granted, front pay; Compensatory and consequential damages, including for emotional distress; Punitive damages; Pre-judgment and post-judgment interest at the highest lawful rate; Attorneys' fees and costs of this action; An injunction and order permanently restraining the sheriff and its officers, agents, successors, employees, and/or representatives from engaging in any such further unlawful conduct and employment practices, including the policies and practices complained of herein; Any such further relief as this Honorable Court finds reasonable.

## COUNT II
## VIOLATION OF THE ILLINOIS WHISTLEBLOWER ACT
## AGAINST ALL DEFENDANTS

**NOW COMES** the Plaintiff, Lopez, by and through his attorneys, for his Complaint against the Defendants, for a violation of the Illinois Whistleblower Act ("Act"), 740 ILCS 174, et seq., and in support thereof states and alleges as follows:

86. Lopez restates and realleges the above paragraphs as though fully set forth herein.

87. Lopez is individual who was always employed on a full-time basis by Defendants relevant hereto; thus, is an "employee" under the Whistleblower Act. See 740 ILCS 174/5.

88. Defendants were acting within the scope of their express or implied authority on behalf of the Sheriff when committing the acts described herein and is therefore an "employer" as defined by the Whistleblower Act. See 740 ILCS 174/5.

89. The unit is an "employer" as defined by the Whistleblower Act. See 740 ILCS 174/5.

90. Dart was acting within the scope of his express or implied authority on behalf of the Sheriff when committing the acts described herein and is therefore an "employer" as defined by the Whistleblower Act. See 740 ILCS 174/5.

91. An employer may not retaliate against an employee who discloses information in a court, an administrative hearing, or before a legislative commission or committee, or in any other proceeding, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation. See 740 ILCS 174/15.

92. "Any other act or omission not otherwise specifically set forth in this Act, whether within or without the workplace, also constitutes retaliation by an employer under this Act if the act or omission would be materially adverse to a reasonable employee and is because of the employee disclosing or attempting to disclose public corruption or wrongdoing." See 740 ILCS 174/20.1.

93. Lopez, as explained above, told the two commissioners that made up the committee that oversees the sheriff of the possible perjury that was being committed.

94. Defendants violated the Whistleblower Act by retaliating against Lopez in numerous ways, including altering his employment, after he disclosed the violations and perjury and taking away his police powers.

95. Lopez has suffered emotional distress, loss of pay, loss of reputation, and other damages as a result of the Defendants' acts.

**WHEREFORE**, the Plaintiff, Lopez, requests that judgment be entered against Defendants, and that this Court award him the following relief: Reinstatement to his previous position, or an equivalent position, with the same seniority status he would have had but for Defendants'

actions; Back pay in an amount to be determined at trial; In the event reinstatement is not granted, front pay; Compensatory and consequential damages, including for emotional distress; Punitive damages; Pre-judgment and post-judgment interest at the highest lawful rate; Attorneys' fees and costs of this action; An injunction and order permanently restraining the sheriff and its officers, agents, successors, employees, and/or representatives from engaging in any such further unlawful conduct and employment practices, including the policies and practices complained of herein; Any such further relief as this Honorable Court finds reasonable.

## COUNT III
## VIOLATION OF THE ILLINOIS PERSONNEL RECORD REVIEW ACT
## AGAINST ALL DEFENDANTS

**NOW COMES** the Plaintiff, Lopez, by and through his attorneys, for his Complaint against the Defendants, Cook County Sheriff; and all individuals in their individual and official capacity, for a violation of the Illinois Personnel Record Review Act (820 ILCS 40/6), and in support thereof states and alleges as follows:

96. Lopez restates and realleges the above paragraphs as though fully set forth herein.

97. Upon information and belief, in February 2024 defendants placed false writeups in Lopez's personnel file.

98. Pursuant to the Illinois Personnel Record Review Act, "[i]f either the employer or the employee knowingly places in the personnel record information which is false, the employer or employee, whichever is appropriate, shall have remedy through legal action to have that information expunged." See 820 ILCS 40/6.

99. Defendant must expunge any false write ups that were placed in Lopez's personnel file.

**WHEREFORE**, the Plaintiff, Lopez, requests that judgment be entered against Defendants, and that this Court award him the following relief: Reinstatement to his previous

position, or an equivalent position, with the same seniority status he would have had but for Defendants' actions; Back pay in an amount to be determined at trial; In the event reinstatement is not granted, front pay; Compensatory and consequential damages, including for emotional distress; Punitive damages; Pre-judgment and post-judgment interest at the highest lawful rate; Attorneys' fees and costs of this action; An injunction and order permanently restraining the sheriff and its officers, agents, successors, employees, and/or representatives from engaging in any such further unlawful conduct and employment practices, including the policies and practices complained of herein; Any such further relief as this Honorable Court finds reasonable.

By:  /s/ *Electronic Signature of Frank Avila*
Frank Avila
Attorney and Counselor at Law
Attorney for the Plaintiff JESSE LOPEZ,
Illinois ARDC No. **6273730**
Member of the General Bar
Member of the Trial Bar
7132 North Harlem Avenue, Suite 107
Chicago, Illinois 60631
Telephone:  **773-671-3480**
E-mail:  FrankAvilaLaw@Gmail.com